226 B.R. 39 (1998)
In re Rodney Dewayne BROWN and Debra Elizabeth Brown, Debtors.
Norman ROUSE, Chapter 7 Trustee, Plaintiff,
v.
CHASE MANHATTAN BANK, U.S.A., N.A., Defendant.
Bankruptcy No. 97-30903, Adversary No. 98-3014.
United States District Court, W.D. Missouri.
September 15, 1998.
*40 Norman E. Rouse, Collins, Webster & Rouse, Joplin, MO, for Plaintiff.
Janice Valdez, St. Louis, MO, for Defendant.

MEMORANDUM OPINION
ARTHUR B. FEDERMAN, Bankruptcy Judge.
Chapter 7 trustee Norman Rouse filed a Complaint to avoid the lien of Chase Manhattan Bank (Chase) on a 1995 Stern Manufactured Home, VIN SSLAL28077, (the Mobile Home) on the grounds that the lien was perfected within the 90-day preference period. Following a response by Chase, both parties submitted briefs on the legal issues. The parties agree that there is no factual dispute. They both, therefore, waived a hearing and consented to this Court ruling on the legal issues presented. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find the lien of Chase was perfected during the preference period. I, therefore, will enter judgment in favor of the trustee.

Factual Background
The basic facts are not in dispute. The debtors Rodney and Debra Brown purchased the Mobile Home on January 30, 1995. Greentree Credit Corporation (Greentree) financed the original transaction and held a perfected purchase money security interest in the Mobile Home. On May 30, 1997, Mr. and Mrs. Brown entered into a refinancing agreement with Chase. The Browns executed *41 a contract and a security agreement giving Chase a security interest in the Mobile Home. In exchange, Chase satisfied in full the lien of Greentree by transferring the sum of $28,784.15 to Greentree on June 16, 1997. Greentree released its lien on the Mobile Home on July 30, 1997. On August 7, 1997, Chase filed its application with the Missouri Department of Revenue for a new title to the Mobile Home listing Chase as the lienholder. The new title was issued on August 8, 1997. On October 20, 1997, 73 days later, the Browns filed a Chapter 7 bankruptcy petition.
The trustee filed this Complaint on June 4, 1998, claiming the lien was perfected during the preference period, therefore, it is subject to avoidance pursuant to section 547(b).
Chase makes three arguments in its defense. First, it claims the trustee failed to prove the debtors were insolvent at the time of the transfer. Second, Chase claims its lien is equitably subrogated to the properly perfected lien of Greentree. And third, Chase claims that Greentree was unjustly enriched by its own negligence, therefore, Chase should be entitled to implead Greentree as a third-party defendant. I will first address the trustee's avoidance power, then I will address each of Chase's arguments in turn.

DISCUSSION

A. Trustee's Avoidance Power

Section 547(b) of the Bankruptcy Code (the Code) allows the bankruptcy trustee to avoid certain transfers that are deemed preferential.[1] As relevant here, a transfer made by an insolvent debtor within 90 days of the bankruptcy petition to a creditor on account of an antecedent debt is preferential:
(B) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property 
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made 
(A) on or within 90 days before the date of the filing of the petition;
. . . . .
(5) than enables such creditor to receive more than such creditor would receive if 
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.[2]
There is really no dispute that the lien was perfected within 90 days of the bankruptcy petition, that the perfection benefitted Chase, and that Chase receives more if its lien is perfected, than if not. Therefore, the first issue is whether the debtors were insolvent at the time of the transfer.

B. Solvency

Chase claims that Mr. and Mrs. Brown were solvent at the time of the refinancing and at the time of the transfer. Chase states that the Browns were living together with shared expenses on August 7, 1997, the date of the transfer the trustee is seeking to avoid. They separated prior to filing their bankruptcy petition, and Chase argues that the increased expenses of living separately precipitated both the bankruptcy and their insolvency.
There is a presumption of insolvency within 90 days of filing a bankruptcy petition.[3] However, if a creditor produces evidence of solvency, the trustee has the ultimate burden of proof on the issue.[4] Chase relies solely on Schedule J of Mr. and Mrs. Brown's bankruptcy schedules to show an increase in expenses as a result of the *42 separation. It claims that Mr. and Mrs. Brown presented evidence indicating they were solvent as part of their loan application. But no such evidence was submitted as part of Chase's brief or exhibits attached thereto. To rebut the presumption, a creditor must present competent evidence that a debtor's assets are greater than a debtor's liabilities at the time of the transfer.[5] According to Mr. and Mrs. Brown's bankruptcy schedules, they owned personal property valued at $37,335 at the time they filed their Chapter 7 petition. They also had $72,195.69 in liabilities. A more in-depth look at the schedules indicates the Browns own a 1995 Ford Aspire valued at $4,700 and a 1995 Ford F-150 Pickup valued at $10,000. They also own the Mobile Home at issue here valued at $22,500. For purposes of this analysis, the Court will assume that all of these assets were owned by debtors at the time of the transfer.
Debtor's secured liabilities consist of the claim of Chase in the amount of $29,114.44, the claim of NationsBank in the amount of $6,400.00, incurred on March 15, 1996, and another claim of NationsBank in the amount of $15,100.00, incurred on October 15, 1996. The schedules also indicate a secured claim of American Express in the amount of $950.00 incurred on August 31, 1997. That claim was incurred after the transfer at issue and will not be considered, however, the other secured claims total $50,614.44.
Debtors' schedules also list unsecured claims in the amount of $20,631.25. Of these claims, two were possibly incurred after the transfer. The claim of Capital One Visa, in the amount of $2,420.00, is for charges through approximately September 1, 1997. The claim of Lowes, in the amount of $291.63, is for charge purchases through approximately August 21, 1997. No one has challenged the accuracy of the bankruptcy schedules, and Chase has submitted no other evidence of solvency as of August 7, 1997. I, therefore, find that Mr. and Mrs. Brown's liabilities exceeded their assets at the time of the transfer, and that they were insolvent for purposes of section 547(b)(3) on the date of the transfer.

C. Exceptions to Avoidance Powers

In addition to solvency, there are other exceptions to the trustee's avoidance powers, however. The trustee cannot avoid a transfer that creates a security interest in property acquired by the debtor if the security interest secures new value that was:
(i) given at or after the signing of a security agreement that contains a description of such property as collateral;
(ii) given by or on behalf of the secured party under such agreement;
(iii) given to enable the debtor to acquire such property; and
(iv) in fact used by the debtor to acquire such property; and
(B) that is perfected on or before 20 days after the debtor receives possession of such property.[6]
That exception does not fit the facts of this case. This is not a purchase money security interest, in that Chase did not originally advance the funds for the purchase of the Mobile Home. And even if it had, it failed to perfect within 20 days of the transfer.
For non-purchase money security interests, the Bankruptcy Code (the Code) provides that a transfer is to be treated as a contemporaneous exchange for value as long as perfection takes place within 10 days of the transfer:
(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made-
(A) at the time such transfer takes effect between the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B).
(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of-
(i) the commencement of the case; or

*43 (ii) 10 days after such transfer takes effect between the transferor and the transferee.[7]
In other words, Chase had 10 days to perfect its non-purchase money security interest in debtors' Mobile Home in order for the transfer to relate back to the time debtors completed the transaction that granted Chase the security interest in the Mobile Home on June 16, 1997. That transaction, which began on May 30, 1997, was completed when Chase transferred the sum of $28,784.15 to Greentree. Thus, Chase had until June 26, 1997 to perfect its security interest in order for the transaction to be a contemporaneous exchange, and not on account of an antecedent debt.[8] But, it is undisputed that Chase did not perfect within the 10 days proscribed by section 547(e)(2) of the Code.
Chase relies on Missouri law to argue that Greentree was required to release its lien within 10 days. Section 700.370 of Missouri's Revised Statutes provides that:
1. Upon the satisfaction of a lien or encumbrance on a manufactured home for which the certificate of title is in the possession of the lienholder, the lienholder shall, within ten days after demand, and, in any event, within thirty days, execute a release of his lien or encumbrance, and mail or deliver the certificate and release to the next lienholder named therein, or, if no other lienholder is so named, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate. The owner may cause the certificate of title, the release, and the required fee to be mailed or delivered to the director of revenue, who shall release the lienholder's rights on the certificate and issue a new certificate of title.[9]
I note there is no remedy in section 700.370 for a lienholder who fails to release its lien upon satisfaction. I also note that section 700.360(1) provides that it is a class A misdemeanor if the owner of a manufactured home fails to take the steps necessary to have the lienholder noted on the certificate of title.[10] Moreover, failure to indicate the lienholder of a lien or encumbrance attached to a manufactured home at the time of making application for the title with the Department of Revenue is a class A misdemeanor.[11] But section 700.370 offers no relief to either the owner or a subsequent lienholder if the current lienholder fails to execute a release of the lien upon its satisfaction. And, Chase offered no evidence that demand was made upon Greentree within 10 days of June 16, 1997, the date Greentree received funds from Chase, to release its lien. However, such evidence would not alter the outcome in this case. The Code required Chase to perfect its security interest in the Mobile Home within 10 days of the transfer that was completed on June 16, 1998. Chase argues that it could not control the timing of the release by Greentree. I disagree. The funds transferred from Chase to Greentree could have been escrowed until Greentree executed the lien release. Using the procedure Chase elected to use, technically, there was no lien on the Mobile Home from June 16, 1997, the date Greentree's lien was satisfied, until August 7, 1997, the date Chase took the last step necessary to perfect its lien. So, for a period of almost two months, Chase was unperfected and Greentree did not have a claim against the Browns. No provision of state or federal law allows a relation-back period to cover such a long period of time. But, state law relation-back periods are not relevant to my decision in this case.
In Fidelity Financial Services, Inc. v. Fink, the Supreme Court stated that "Congress intended a trustee's power to avoid pre-petition preferences to prevail over any state rules permitting relation back."[12] Therefore, Chase had only ten days within which to perfect its nonpurchase money security interest in the Mobile Home.[13] Otherwise, *44 the transfer of the security interest to Chase in exchange for Chase satisfying the Browns' obligation to Greentree is not a contemporaneous exchange for value. Rather, the transaction creates an antecedent debt that is unperfected until the time the lien is noted on the title. That perfection took place within the preference period and is subject to avoidance by the trustee. Creditors who wish to prevent this harsh result had best refrain from transferring funds in satisfaction of prior liens until such time as the release of the lien can be simultaneously obtained.

D. Motion to Implead Greentree as Third-Party Defendant

Chase argues that the negligence of Greentree led to this result, therefore, it should be allowed to implead Greentree as a third-party defendant and pursue recovery from Greentree for unjust enrichment. As stated above, this result is not dictated by state law. Moreover, Chase offered no evidence that demand was made upon Greentree. And, even in the event of demand, Chase had 10 days from its own transfer of funds to Greentree to perfect its lien, not 10 days from the date of demand, as required by Missouri law. Since there also appears to be no legal remedy for failure to execute a lien release within the statutorily proscribed period, this Court respectfully declines Chase's suggestion that Greentree be impleaded into this adversary action. Chase is, of course, free to pursue any remedy it might have against Greentree in the Missouri Circuit Court.

E. Equitable Subrogation

Chase next argues that but for the neglect of Greentree, its lien would have been properly perfected, therefore, it is entitled to be equitably subrogated to Greentree's previously perfected position.
The doctrine of equitable subrogation involves "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt."[14] This equitable doctrine, which has as its goal the advancement of justice and the prevention of injustice, is used "only in extreme cases bordering on if not reaching the level of fraud."[15] In fact, under common law the doctrine of equitable subrogation was applied to relieve "one compelled to pay a debt which ought to have been paid by another," therefore, the payor was "entitled to exercise all of the remedies which the creditor possessed against that other."[16] There are no allegations of fraud or misrepresentation in this case. Nor does Chase maintain that it was "compelled" to execute the refinancing agreement. Moreover, in Missouri, a lender is not entitled to equitable subrogation if it bears any responsibility for the status of its lien.[17] As stated above, Chase could have conditioned the transfer of funds to Greentree upon Greentree's release of the lien. Or, Chase could have accepted an assignment of Greentree's debt upon the same contractual terms. But Chase chose to negotiate a new contract.
Chase, in essence, is asking this Court to use its equitable power to override the fact that Chase perfected its lien within the preference period. Apparently, Chase is relying on section 105(a) of the Code, which authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[18] However, this Court's equitable powers are not unlimited. The powers enumerated in section 105(a) "are not a license *45 for a court to disregard the clear language and meaning of the bankruptcy statues and rules."[19] In In re Gateway Center Bldg. Investors, Ltd, the bankruptcy court noted that the Code is silent as to the priority of mechanics liens and deed of trust liens.[20] Therefore, the court found that "in the absence of conflict with federal interests, state law governs the question of property rights."[21] At that point the bankruptcy court undertook a thorough analysis of the applicability of the common law doctrine of equitable subrogation.[22] In this case, however, there are specific Code provisions that govern the priority of perfected and unperfected creditors. The bankruptcy trustee has, as of the commencement of the case, the rights and powers of a hypothetical judicial lien creditor:
(A) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.[23]
Thus, the trustee is deemed to have a lien on all lienable property of the debtor. The hypothetical lien is inferior to any existing perfected lien at the time the petition is filed, and the hypothetical lien is superior to any unperfected lien. Moreover, the Code authorizes the trustee to avoid any transfer within the preference period as discussed above.[24] The perfection of a lien within the preference period is considered a transfer, which is avoidable by the trustee. I find that the doctrine of equitable subrogation is not applicable in a bankruptcy case, when to apply it would directly circumvent the result intended by the Code. As a result, I find that the lien of Chase Manhattan Bank, U.S.A., N.A., on a 1995 Stern Manufactured Home, VIN SSLAL28077, is set aside as a voidable preference.
An Order in accordance with this Memorandum Opinion will be entered this date.
NOTES
[1] 11 U.S.C. § 547(b).
[2] Id.
[3] 11 U.S.C. § 547(f); Jones Truck Lines, Inc. v. Full Serv. Leasing Corp. (In re Jones Truck Lines, Inc.), 83 F.3d 253, 258 (8th Cir.1996).
[4] Jones Truck Lines, 83 F.3d at 258.
[5] 11 U.S.C. § 101(32)(A); Carlson v. Rose (In re Rose), 86 B.R. 193, 194 (Bankr.W.D.Mo.1988).
[6] Id. at § 547(c)(3).
[7] 11 U.S.C. § 547((e)(2).
[8] Id. at § 547(b)(2) and (c)(1).
[9] Mo. Stat. Ann. § 700.370(1) (1988).
[10] See Id. at § 700.360(1).
[11] Id. at § 700.390.
[12] ___ U.S. ___, 118 S.Ct. 651, 654, 139 L.Ed.2d 571 (1998).
[13] 11 U.S.C. § 547(e)(2).
[14] Kansas City Downtown Minority Dev. Corp. v. Corrigan Assoc. Ltd. Partnership, 868 S.W.2d 210, 223 (Mo.Ct.App.1994).
[15] Kansas City Downtown Minority Dev. Corp. v. Corrigan Assoc. Ltd. Partnership, 868 S.W.2d 210, 223 (Mo.Ct.App.1994); Landmark Bank v. Ciaravino, 752 S.W.2d 923, 928 (Mo.Ct.App.1988).
[16] Aetna Casualty and Surety Co. v. Clerk, U.S. Bankruptcy Court, New York, New York (In re Chateaugay Corp.), 89 F.3d 942, 947 (2nd Cir. 1996) (quoting American Surety Co. v. Bethlehem Nat'l Bank, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941)).
[17] Landmark Bank v. Ciaravino, 752 S.W.2d at 928.
[18] 11 U.S.C. § 105(a); Viking Assoc., L.L.C. v. Drewes (In re Olson), 120 F.3d 98, 102 (8th Cir.1997).
[19] Olson, 120 F.3d at 102; Bird v. Carl's Grocery Co. (In re NWFX, Inc.), 864 F.2d 593, 595 (8th Cir.1989); Mixon v. Anderson (In re Ozark Restaurant Equip. Co., Inc.), 816 F.2d 1222, 1230 (8th Cir.1987) cert. denied Jacoway v. Anderson, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987).
[20] 95 B.R. 647, 649-50 (Bankr.E.D.Mo.1989).
[21] Id. at 650.
[22] In re Gateway Center Bldg. Investors, Ltd., 95 B.R. 647, 651-54 (Bankr.E.D.Mo.1989).
[23] 11 U.S.C. § 544(a)(1).
[24] 11 U.S.C. § 547(b).