In re Gregory Thomas WESTFALL, d/b/a Westfall Iron & Metal and Nico Ann Westfall, Debtors.

**Bankruptcy No. 98–60679.**

United States Bankruptcy Court,
W.D. Missouri,
Southern Division.

Nov. 20, 1998.

Order Denying Reconsideration
Dec. 14, 1998.

Robert Stillings, Springfield, MO, for Associates Commercial Corp.

Thomas J. O'Neal, Shughart Thomson & Kilroy, Springfield, MO, for trustee.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

█ Creditor Associates Commercial Corporation (Associates) filed a motion to lift stay as to a 1989 Kenworth T600 TRK TR, VIN 1XKADB9X5KS540962 (the Kenworth) in this Chapter 7 bankruptcy case. The Chapter 7 trustee (the Trustee) filed a response and objected to the relief requested on the grounds that Associates had not properly perfected its lien in the Kenworth. As part of his response, the Trustee filed a Counterclaim. The Counterclaim seeks relief in the form of an Order of this Court avoiding the lien of Associates, and an Order of Turnover as to the Kenworth. A final hearing was held on October 21, 1998. The Federal Rules of Bankruptcy Procedure (the Rules) require that relief in the form of lien avoidance or turnover be requested as an adversary proceeding.[1] However, no party objected to the Counterclaim as filed, and no party objected at the hearing that it had not been afforded the protections found in the Rules that govern adversarial proceedings. I, therefore, will treat this matter as an adversarial proceeding. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Associates failed to properly perfect its lien in Missouri, its motion to lift the automatic stay will be denied, and Associates' claim will be allowed as a general unsecured claim. I will issue an Order avoiding Associates' lien on the Kenworth, and I will issue an Order for its turnover to the Trustee.

### FACTUAL BACKGROUND

There is no dispute as to the facts. Debtor Gregory Westfall, a resident of Missouri, purchased the Kenworth from Rush Truck Centers of Texas, Inc., d/b/a Lufkin Peterbilt, Inc. (Rush) on October 12, 1996. In order to finance the purchase of the Kenworth, Mr. Westfall signed the Security Agreement in favor of Rush that same date.[2] The Security Agreement contained Associates' logo in the upper left hand corner of the first page, and the legend "ORIGINAL FOR ASSOCIATES" appeared at the bottom of each of the five pages in the Security Agreement.[3] Page 5 of the Security Agreement contains an assignment clause. The assignment clause states:

> For value received, the undersigned ("Assignor") hereby sells, assigns and transfers to ASSOCIATES COMMERCIAL CORPORATION, its successors and assigns ("Assignee") all Assignor's right, title and interest in and to (a) that certain security agreement dated 10/12/96 between Greg T. Westfall ("Buyer") and Assignor which included, without limitation, an item of Col-

1. Fed.R.Bankr.P. 7001(1) and (2).

2. Trustee's Ex. A.

3. *Id.*

lateral, as defined herein, with the following serial number: 1XKADB9X5KS540962 (the Security Agreement), (b) any notes, guaranties and other documents executed in connection with the Security Agreement (herein, with the Security Agreement, called the "Documents"), (c) all amounts due and to become due under the Documents, (d) the property in which a security interest is granted to or reserved by Assignor under the Security Agreement (the "Collateral"), and (e) all of Assignor's rights and remedies under or in connection with the Documents, including the right, without notice to Assignor and without affecting Assignor's liability hereunder: (i) to collect any and all amounts owing under the Documents, (ii) to endorse Assignor's name on any note or remittance received, (iii) to release or discharge the Buyer under the Security Agreement or any other operation of law or otherwise, (iv) to settle, compromise or adjust any and all rights against and to grant extensions of time of payment to Buyer or any other persons obligated under the Documents, and (v) to take any other action Assignor might take but for this assignment.[4]

The assignment was also executed on October 12, 1996. The security agreement states that the Kenworth will be kept at P.O. Box. 367, Mountain Grove, Missouri.

Mr. Westfall testified at the hearing that Gary Muckleroy, the salesman at Rush, offered him the option of titling the Kenworth in Texas, Missouri, or Oklahoma. Mr. Westfall stated that he was already aware that he would have to pay Missouri sales tax if he titled the Kenworth in Missouri. Mr. Muckleroy's deposition was admitted without objection at the hearing. In the deposition Mr. Muckleroy testified that he told Mr. Westfall that many people in Texas title their trucks in Oklahoma to avoid paying sales tax and personal property tax.[5] Mr. Muckleroy also told Mr. Westfall that there were titling agents he had used in the past that would handle all the paperwork if Mr. Westfall

preferred Oklahoma.[6] When Mr. Westfall indicated he wanted to title the Kenworth in Oklahoma, Mr. Muckleroy referred him to Pro–Cert, Inc., a titling company in Oklahoma. Pro–Cert apparently prepared an Oklahoma Lien Entry Form that identified the collateral as the Kenworth, the name and address of the secured party as Kufkin [sic] Peterbilt, Inc., 3901 North Medford Dr., Lufkin, Texas, and the name and address of the debtor as Greg T. Westfall, 5100 N. Brookline, Ste # 210, Oklahoma City, Oklahoma 73112.[7] The Oklahoma lien entry form was signed on October 18, 1996, in a signature block reserved for "SECURED PARTY/ASSIGNEE SIGNATURES." The signature is not legible. The assignee, however, is clearly identified on the form as Associates Commercial Corp., # 4503, P.O. Box. 168647, Irving, Texas 75016.[8]

Neither Associates nor Rush ever perfected its lien in Missouri. Mr. Westfall defaulted and returned the Kenworth to Rush sometime before filing this Chapter 7 bankruptcy petition on April 16, 1998.

Associates filed a motion for relief from the automatic stay and a motion for an order of abandonment as to the Kenworth on July 20, 1998. In its motion Associates claims that Mr. Westfall surrendered the Kenworth and that there is no equity in the collateral. The Trustee, however, refused to abandon the Kenworth. In the Trustee's response to Associates' request for stay relief, the Trustee filed a counterclaim, asking this Court to avoid the lien of Associates on the grounds that the lien is not perfected in Missouri. The Trustee also seeks an Order of this Court declaring that the Kenworth is an asset of the bankruptcy estate and an Order directing the Missouri Department of Revenue to issue title to the Kenworth free and clear of all liens and encumbrances to the Trustee. The only issue in the case is whether Associates' lien is perfected in Missouri.

4. *Id.* at page 5.

5. Trustee's Ex. C.

6. *Id.* at page 9.

7. Trustee's Ex. B.

8. *Id.*

## DISCUSSION

■■■ I will first deal with a collateral argument. Associates seems to claim that Rush is not its agent, therefore, it is not responsible for any inappropriate advice given by Mr. Muckleroy to Mr. Westfall regarding the proper place to title the Kenworth. I will not reach the issue of whether Rush is or is not Associate's agent. The documents are very clear. Rush is the "Assignor" and Associates is the "Assignee." An assignee takes all of the rights, title, and interest that the assignor has in property. "An absolute assignment 'divests the assignor of all interest in the thing assigned, and vests the same in the assignee.'"[9] Thus, if the lien was properly perfected in Missouri as to Rush, it was properly perfected as to Associates. And the only relevant issue in this case is perfection, because there are specific provisions of the Bankruptcy Code (the Code) that govern the priority of perfected and unperfected creditors. The bankruptcy trustee has, as of the commencement of the case, the rights and powers of a hypothetical judicial lien creditor:

(A) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.[10]

Thus, the trustee is deemed to have a lien on all lienable property of the debtor. The hypothetical lien is inferior to any existing perfected lien at the time the petition is filed, and the hypothetical lien is superior to any unperfected lien.[11] If the lien was properly perfected in Missouri at the time the case

was filed, Associates' claim to the Kenworth is secured, and the bankruptcy estate is entitled only to any non-exempt equity that might exist. But, if the lien was not properly perfected in Missouri, then the Kenworth is an asset of the bankruptcy estate and Associates has a general unsecured claim against the estate.

■■■ In Missouri a lien on a motor vehicle is perfected, with certain exceptions, when an application for a certificate of ownership is delivered to the director of revenue:

2. A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of delivery.[12]

This statute is primarily applicable to motor vehicles that are purchased in Missouri or purchased for use in Missouri. The exceptions involve motor vehicles or trailers that arrive in Missouri with previously perfected liens or encumbrances.

3. If a motor vehicle or trailer is subject to a lien or encumbrance when brought into this state, the validity and effect of the lien or encumbrance is determined by the law of the jurisdiction where the motor vehicle or trailer was when the lien or encumbrance attached, subject to the following:

(1) If the parties understood at the time the lien or encumbrance attached that the motor vehicle or trailer would be kept in this state and it was brought into this state within thirty days thereafter for purposes other than transportation through this state, the validity and

**9.** *Farmers Ins. Co., Inc. v. Effertz,* 795 S.W.2d 424, 426 (Mo.Ct.App.1990).

**10.** 11 U.S.C. § 544(a)(1).

**11.** *Rouse v. Chase Manhattan Bank, U.S.A., N.A. (In re Brown),* 226 B.R. 39 (W.D.Mo.1998).

**12.** Mo.Stat.Ann. § 301.600.2 (1994).

effect of the lien or encumbrance in this state is determined by the law of this state;

(2) If the lien or encumbrance was perfected under the law of the jurisdiction where the motor vehicle or trailer was when the lien or encumbrance attached, the following rules apply:

(a) If the name of the lienholder is shown on an existing certificate of title or ownership issued by that jurisdiction, his lien or encumbrance continues perfected in this state;

(b) If the name of the lienholder is not shown on an existing certificate of title or ownership issued by that jurisdiction, the lien or encumbrance continues perfected in this state three months after a first certificate of ownership of the motor vehicle or trailer is issued in this state, and also thereafter if, within the three month period, it is perfected in this state. The lien or encumbrance may also be perfected in this state after the expiration of the three month period; in that case the perfection dates from the time of perfection in this state.[13]

In this case, however, Mr. Westfall did not operate the Kenworth in Oklahoma for a while, then move to Missouri. He lived in Missouri at the time he purchased the Kenworth, and by his own testimony, he immediately removed the Kenworth to Missouri. Moreover, there was no evidence that the Kenworth was ever in Oklahoma, let alone in Oklahoma at the time the lien attached. A lien attaches to collateral when the following events occur: (1) the secured party takes possession of the collateral or signs a security agreement that contains a description of the collateral; (2) value has been given; and (3) the debtor has rights in the collateral.[14] The only evidence before this Court indicates that the lien attached while the Kenworth was in Texas. However, the lien was never perfected in Texas. Both Mr. Huckleroy and

Mr. Westfall testified that they understood the Kenworth would be kept in Missouri, and the evidence indicates that the Kenworth was brought into this state within 30 days. Thus, Associates can only rely on section 301.600.3(2)(a) of Missouri's Revised Statutes to protect its priority if it perfected its lien in Texas.

Associates cites several cases that support its position.[15] However, each of the cases is distinguishable. In *Brown* the court found that if the "lien was perfected in the state of purchase and '[i]f the name of the lienholder is shown on an existing certificate of title . . . issued by that jurisdiction, his lien . . . continues perfected in this state.' "[16] But the Kenworth was not purchased in Oklahoma, it was purchased in Texas. And it was never perfected in Texas. In *Dawson*, the Court never analyzed the language of section 301.600. It instead looked only to section 9–103 of Missouri's version of the Uniform Commercial Code (the UCC). In *Dawson* the debtor, a Missouri resident, bought a tractor from a Missouri dealer and registered the tractor in Indiana. Indiana issued a certificate of title showing the lienholder on its face. Sometime later, the debtor filed a bankruptcy petition. The trustee maintained the lien had to be perfected in Missouri. The secured creditor argued that its lien was perfected in all states if it was perfected in one. The Court agreed with the secured creditor. However, *Dawson* was decided in 1976 before the present version of the UCC was adopted in Missouri. In the present version, the UCC states that the law of the jurisdiction in which the debtor is located governs the "perfection and the effect of perfection or non-perfection of the security interest" in mobile goods, such as a motor vehicle or trailer.[17] Clearly, this present version removes all reference to debtor's place of business. In *Dawson*, the debtor lived in Missouri, but he leased the truck to an Indiana firm with offices in Indiana. He

**13.** *Id.* at § 301.600.3.

**14.** *Id.* at § 400.9–203(1) (Supp.1998).

**15.** *Uhle v. Parts and Trucks (In re Paige)*, 679 F.2d 601 (6th Cir.1982); *VTCC, Inc. v. Brown (In re Brown)*, 55 B.R. 172 (Bankr.W.D.Mo.1985); *In*

re Dawson, 21 U.C.C. Rep.Serv. 293, 1976 WL 23641 (E.D.Mo.1976).

**16.** 55 B.R. at 173.

**17.** Mo.Stat.Ann. 400.9–103(3)(b) (Supp.1998).

also worked for the Indiana firm on occasion.[18] Likewise, *Uhle v. Parts and Trucks (In re Paige)* was decided under an earlier version of the UCC.[19] And, the court in *Paige* relied solely on the UCC, not on the motor vehicle lien perfection statutes in the state where debtor was domiciled. I do not necessarily disagree with the reasoning in any of these cases. I point out, though, that Associates relies on *Brown,* and the Court in *Brown* relied only on the motor vehicle lien perfection statutes, stating that "Uniform Commercial Code filing requirements are not applicable to the perfection of liens on motor vehicles." [20] In reliance on *Brown* I find that section 301.600 of Missouri's Revised Statutes requires this Court to look to Texas to determine if Associates' lien was perfected in Missouri. Since the lien was not perfected in Texas, I cannot so find.

I also note that the Honorable Frank W. Koger decided a very similar issue in *Carlson v. Seeley (In re Maxwell).*[21] In *Maxwell,* Judge Koger held that a security interest in a tractor trailer sold in Missouri to a Missouri resident could only be perfected by proper filing with the Missouri Department of Revenue.[22] In reaching this conclusion, Judge Koger relied on the clear language of section 301.600, not on the UCC.

In summary, I find that the lien of Associates was not properly perfected in Missouri. I further find that any reciprocity Missouri recognizes in liens perfected in another jurisdiction extends only to the perfection laws of the jurisdiction where the collateral was located at the time the security interest attached. Since Associates lien was not perfected in Texas, the State of Missouri does not recognize the perfection. I will, therefore, enter an Order denying Associates' motion for relief from the automatic stay. I will also enter an Order of Turnover for the Kenworth and an Order avoiding the lien of Associates.

An Order in Accordance with this Memorandum Opinion will be entered this date.

## ORDER DENYING MOTION TO RECONSIDER

 Creditor Associates Commercial Corporation (Associates) filed a Motion to Reconsider and Motion to Alter or Amend Judgment entered by this Court on November 20, 1998. Associates argues that section 301.600.3 of Missouri's Revised Statutes is inapplicable, that section 400.9–103 is applicable, and that section 400.9–103 should be applied to recognize its lien as having been validly perfected in Oklahoma. Associates correctly points out that Missouri law recognizes vehicle liens that are perfected in another state. That recognition allows a Missouri resident to purchase a vehicle in another state, and allows the lender or seller to perfect its lien under the laws of its state before the vehicle is moved to Missouri. Thus, if the buyer brings the vehicle to Missouri and never registers it (to avoid sales tax or otherwise), the creditor still has a valid lien. For that reason, section 300.600.3 recognizes a lien that was valid in the state in which the vehicle "was" at the time of perfection. In this case, that could be Texas, but certainly not Oklahoma. Section 400.9–103, upon which Associates relies, provides that as to goods issued under a Certificate of Title perfection is governed by the law of the jurisdiction "issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction." [1] The Kenworth was never "removed" from the state of perfection—Oklahoma—because it was never located in that state to begin with. Thus, both provisions presume that, to be recognized in Missouri, a motor vehicle lien must have been perfected in a state in which the

---

**18.** 21 U.C.C.Rep.Serv. 293.

**19.** *See* 679 F.2d 601, 602 (6th Cir.1982).

**20.** 55 B.R. at 172 (citing *In re Jackson,* 268 F.Supp. 434 (E.D.Mo.1967)); *Farmers & Merchants Bank v. Borg–Warner Acceptance Corp.,* 665 S.W.2d 636, 640 (Mo.Ct.App.1983).

**21.** 89 B.R. 46 (Bankr.W.D.Mo.1988).

**22.** *Id.* at 47.

**1.** Mo.Stat.Ann. § 400.9–103(b) (Supp.1998).

vehicle was located, or in which the debtor resided, at the time of perfection.

 Associates contends that no other creditor is harmed if Missouri recognizes its lien, since the only title available for the Kenworth clearly noted its lien. However, states that are entitled to collect sales tax are harmed by schemes to avoid the payment of that sales tax. Associates' predecessor-in-interest, to whose rights it succeeds, suggested that the vehicle be titled in Oklahoma to avoid Missouri sales tax, and prepared for submission to that state documentation showing a false address. Lufkin Peterbilt was not an innocent party to the debtors' evasion of state sales tax, and Associates Lufkin Peterbilt was not an innocent party to the debtors' evasion of state sales tax, and Associates succeeds to all its rights and burdens. As stated in the Memorandum Opinion here, The Honorable Frank W. Koger, Chief Judge, previously found that Missouri does not recognize a lien perfected in a state in which neither lender nor borrower resides, for the purpose of avoiding state sales tax. I agree. The motion to reconsider, and to alter or amend judgment, is, therefore, DENIED.

IT IS SO ORDERED.