## In re Richard Joseph COLLINS, Debtor.

**Bankruptcy No. 99–40239.**

United States Bankruptcy Court,
W.D. Missouri.

May 21, 1999.

Gary Barnes, Kansas City, MO, trustee.

Jack Grate, Independence, MO, for debtor.

Robert A. Pummill, Kansas City, MO, for Briggs & Tillman, Inc.

### ORDER APPROVING COMPROMISE

FRANK W. KOGER, Chief Judge.

The Chapter 7 Trustee has filed a Motion to Approve Compromise wherein the Trustee requests Court approval of a compromise between the Trustee and a creditor, Briggs & Tillman, Inc., regarding the treatment of several vehicles which had been scheduled as assets of the estate and which had been seized prepetition for an execution sale on a judgment obtained by Briggs & Tillman. Upon shortened notice, the debtor filed an objection to the proposed compromise. The Court conducted a hearing on the Trustee's Motion and the debtor's Objection thereto and hereby issues the following Findings of Fact and Conclusions of Law pursuant to Fed. R.Bankr.P. 7052.

## Factual Background

On July 21, 1998, the Circuit Court of Saline County, Missouri, entered a Judgment of Partial Summary Judgment in a suit by Briggs & Tillman against the debtor and his ex-wife, Darlene Collins, wherein the court granted summary judgment in favor of Briggs & Tillman and against the debtor and Darlene Collins in the amount of $39,798.33 plus interest. Pursuant to an August 5, 1998, Request and Order for Execution filed by Briggs & Tillman, on August 24, 1998, the Sheriff of Saline County levied on certain property belonging to the debtor. According to the Sheriff's report, he levied the following property:

1970 Plymouth Superbird

1967 Pontiac GTO

1980 Ford Custom Box Van

Three Pull Behind Trailers

One Gray Dump Truck Chevrolet 1975

Truss Machine and Trailer

1973 Brown Chevrolet Ladder Truck

One Box Trailer

Budweiser Stein Collection

Apparently, there was a dispute as to actual ownership of some of the levied items in that the debtor's mother, Lois Collins, claimed an ownership interest in some of the property. However, the parties to that action entered into a Stipulation for Order of Sale Upon Execution in the Saline County Circuit Court wherein the parties stipulated that Lois Collins could recover from the Sheriff the box trailer, the truss machine and trailer, and a home-made pull behind trailer. The parties further stipulated that the remainder of the property was rightfully seized by the Sheriff and was subject to sale by the Sheriff pursuant to execution and collection of the judgment rendered against the debtor and Darlene Collins.

After the Saline County Circuit Court entered an Order of Sale Upon Execution, the Sheriff's Sale was advertised and scheduled to be held on January 26, 1999, at 2:00 p.m. on the steps of the County Courthouse.

On January 25, 1999, the day before the scheduled Sheriff's Sale, the debtor filed his Chapter 7 petition. The Sheriff was notified shortly before the scheduled sale and the sale was canceled accordingly.

On February 23, 1999, Briggs & Tillman filed a Motion for Relief From Automatic Stay, asserting that it holds a perfected lien upon the levied assets, that there is no equity in the property for the benefit of the estate, and that such property is not necessary for an effective reorganization. This Motion further alleges that cause exists for relief from the stay based upon the lack of adequate protection and the debtor's lack of equity therein. Briggs & Tillman seeks a lift of the automatic stay so that it can proceed with the Sheriff's Sale.

The Trustee filed an Objection to Briggs & Tillman's motion for relief from stay, alleging that because Briggs & Tillman's interest in the levied motor vehicles does not appear on the certificates of title as required for perfection of a motor vehicle under Missouri law, the Trustee's interest in those vehicles is superior to the interest of Briggs & Tillman pursuant to 11 U.S.C. § 544.

On March 22, 1999, this Court held a hearing on the motion for relief from stay and the Trustee's response thereto. At that time, apparently because the Trustee now was not sure that he was a guaranteed winner, the Trustee announced that he had reached a compromise with Briggs & Tillman in which they had agreed that the Trustee would sell the levied property and the parties would split the proceeds after costs, with Briggs & Tillman bearing the responsibility for pre-petition charges. That same date, the Trustee filed the instant Motion to Approve Compromise and Shorten Objection Period. Pursuant to the Trustee's request, the Court entered an Order shortening the time for objections to ten days from the date of the Notice of the proposed compromise. The

debtor filed his Objection to the proposed compromise. No other party objected.

### Discussion

■ This Court is now called upon to determine the propriety of the proposed compromise between the Trustee and Briggs & Tillman. This determination rests on the resolution of two primary issues, namely, under Missouri law, what sort of interest, if any, does a judgment creditor obtain in vehicles seized by the sheriff pursuant to a levy and execution following a state court judgment, and does the filing of a bankruptcy petition after the levy but before the sheriff's sale give the bankruptcy trustee an interest superior to that of the judgment creditor?

The issue of the nature of Briggs & Tillman's interest in the vehicles is paramount because under the Bankruptcy Code, creditors are given different priority and treatment based on the nature of their interests, particularly whether their interests are perfected or unperfected. *See In re Westfall*, 227 B.R. 734, 737 (Bankr. W.D.Mo.1998).[1] Section 544(a)(1) of the Bankruptcy Code provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).

■ Under this provision, upon the commencement of a bankruptcy case, the trustee has the status of a creditor with a judicial lien on all property on which a creditor could have obtained a judicial lien, whether or not such a creditor actually exists. *See* 5 Lawrence P. King, Collier on Bankruptcy ¶ 544.05 (15th ed. rev.1997); *In re Westfall*, 227 B.R. at 737 (as of commencement of the case, the bankruptcy trustee has the rights and powers of a hypothetical judicial lien creditor). This hypothetical lien given to the trustee by § 544 is inferior to any perfected lien existing at the time the petition is filed and is superior to any unperfected lien. *Westfall* at 737 (*citing Rouse v. Chase Manhattan Bank, U.S.A., N.A. (In re Brown)*, 226 B.R. 39 (W.D.Mo.1998)); *see also Carlson v. Seeley (In re Maxwell)*, 89 B.R. 46, 47 (Bankr.W.D.Mo.1988) (section 544 provided that the trustee stands in the position of a judgment lien creditor and his lien standing is inferior only to prior liens which have been perfected).

In the case at bar, if Briggs & Tillman has a lien in the vehicles by virtue of the Sheriff's levy which is superior to that of the Trustee's hypothetical judicial lien, then Briggs & Tillman would have priority to the proceeds derived therefrom. In such case, since there is no non-exempt equity in the vehicles, the bankruptcy estate would receive nothing from the sale of the vehicles. If, on the other hand, Briggs & Tillman's interest in the vehicles by virtue of the Sheriff's levy is inferior to the Trustee's interest pursuant to 11 U.S.C. § 544, then the vehicles would be an asset of the bankruptcy estate and Briggs & Tillman, having only a general unsecured claim against the estate, would share in the proceeds of the vehicles pro rata with the other general unsecured creditors. The debtor urges that the latter is the proper outcome and that the proposed compromise between the Trustee and Briggs & Tillman improperly favors

---

1. The Court notes at the outset that because the Sheriff's levy of the vehicles (which ostensibly created a lien in them) occurred more than 90 days prepetition, there has been no § 547 preference allegation.

Briggs & Tillman at the expense of the other general unsecured creditors.

In Missouri,[2] perfection of liens on motor vehicles is governed by Missouri Revised Statute § 301.600. That section provides that a lien or encumbrance on a motor vehicle or trailer is perfected by the delivery of an application for a certificate of ownership to the director of revenue. Thus, it is generally accepted that in order to have a perfected lien on a motor vehicle in Missouri, the lien must be noted on the certificate of title. The debtor asserts that because Briggs & Tillman's interest was never noted on the certificates of title of the vehicles and trailers, it did not have a perfected lien against them and the Trustee's hypothetical judicial lien is thus superior.

This assertion appears to have merit, particularly since the Missouri statutes also provide that "[t]he method provided in sections 301.600 to 301.660 of perfecting and giving notice of liens or encumbrances subject to sections 301.600 to 301.660 is exclusive." Mo.Rev.Stat. § 301.650.2; *see also General Motors Acceptance Corp. v. Roach (In re Roach)*, 115 B.R. 200, 201 (Bankr.E.D.Mo.1990). In fact, the Trustee originally agreed with the debtor's position herein, asserting in his objection to Briggs & Tillman's motion to lift the stay that Briggs & Tillman did not have a perfected lien on the vehicles.

However, the Trustee apparently concluded upon further reflection that the law was not so clear. Although the perfection statute cited above seems self-explanatory, Missouri law also provides that "[a] levy creates a lien upon personal property," V.A.M.R. 76.07; Mo.Rev.Stat. § 513.085 (no execution prior to the levy thereof shall be a lien on any goods, chattels or other personal property), and that "[a] levy upon tangible personal property shall be made by the sheriff taking possession of the property unless such seizure is imprac-

ticable." V.A.M.R. 66.06(b); Mo.Rev.Stat. § 513.010.1 ("[t]he word 'levy,' as used in this chapter, shall be construed to mean the actual seizure of property by the officer charged with the execution of the writ"). Thus, Missouri law also plainly provides that the sheriff's taking possession of personal property pursuant to a levy and execution creates a lien upon the levied property.

As counsel suggested at the hearing, there is surprisingly little case law on the particular issue of how these statutory provisions and rules would apply to the facts in the case at bar, and it is unclear exactly how the levy statutes and rules interrelate with § 301.600. While it is clear that when a sheriff levies upon vehicles by taking possession of them a lien is created in the levied property, it is unclear, at least to this Court, what the exact nature of that lien is and how it relates to the trustee's priority as a hypothetical lien creditor. Certainly, if Briggs & Tillman's lien in the vehicles by virtue of the Sheriff's levy were "perfected" under Missouri law, Briggs & Tillman's interest would be superior to the Trustee's and it would be entitled to the proceeds thereof. Unfortunately, however, the Missouri case law this Court found regarding the lien created by a sheriff's levy of vehicles does not specifically say whether these liens are "perfected" or "unperfected."

As a result, rather than focusing myopically on the question of whether Briggs & Tillman's lien on the vehicles was "perfected" as such, the real question presented to this Court is whether, as a hypothetical judicial lien creditor at the moment of the bankruptcy filing, the Trustee's interest is superior to that of Briggs & Tillman's lien. In other words, could a creditor have obtained a judicial lien on the vehicles superior to that of Briggs & Tillman's lien on the day the bankruptcy petition was filed?

---

**2.** Although the strong-arm powers conferred by § 544 find their source in federal law, the rights of the trustee as the hypothetical judi-

cial lien creditor are determined by state law. *See* 5 Collier on Bankruptcy ¶ 544.05.

Again, this Court was unable to find any cases, either Missouri cases or bankruptcy cases, directly on point. However, the Court found that the cases dealing with judicial liens created through garnishment to be the most comparable and therefore the most helpful.

In that vein, the decision by the Bankruptcy Court for the Eastern District of Missouri in *Mann v. Art Britton Auction Sales, Ltd. (In re Riverfront Food and Beverage Corp.)*, 29 B.R. 846 (Bankr. E.D.Mo.1983), is instructive. In that case, the trustee filed a complaint to recover for the estate approximately $10,500 in net proceeds from a pre-bankruptcy auction sale of the debtor's inventory.

According to the court, sometime prior to August 20, 1981, the debtor had turned over its inventory to an auction company for sale at auction. On August 20, 1981, before the inventory was sold by the auctioneer, a judgment creditor ("Granite") who had received a judgment of over $24,-000 against the debtor, caused an execution to issue in aid of satisfaction of its judgment and caused a Summons to Garnishee to be to be served on the auction company which was holding the inventory for sale. On August 21, 1981 (the day after Granite's garnishment), the IRS filed a Notice of Tax Lien with the Recorder of Deeds in the City of St. Louis for unpaid taxes in the amount of $6,526.26. On August 24, 1981, the auctioneer sold the debtor's inventory at auction for a net sum of approximately $10,500. On October 15, 1981, the IRS caused a Notice of Levy to be served on counsel for the auctioneer, and on October 20, 1981, the debtor filed its petition in bankruptcy.

When the trustee asserted a priority interest in the auction proceeds superior to the judgment creditor and the IRS, the bankruptcy court was called upon to determine the relative priorities of the claims against the auction proceeds. The bankruptcy court concluded that Granite did not have first priority, despite the fact that it served the first Summons to Garnishee, because the garnishment was not a proper levy on the inventory. In doing so, the bankruptcy court distinguished the actual inventory in the hands of the auctioneer from the monetary proceeds received after the auction. Prior to the auction, the inventory was tangible personal property and as such, under Missouri law, the service of the Summons to Garnishee did not create a lien upon the inventory in the hands of the Garnishee. Rather, according to the court, a levy on tangible personal property, such as the inventory, does not create a lien unless and until it is seized by the sheriff. *In re Riverfront*, 29 B.R. at 849–50.

The court further held that a lien was created in favor of Granite upon the indebtedness owed by the auctioneer to the debtor on the date the auctioneer sold the debtor's property as a result of the garnishment served four days earlier, but by that time, a perfected lien in favor of the IRS had come into existence pursuant to federal tax statutes and this lien was superior to Granite's garnishment lien. *Id.*

The discussion in this case plainly suggests that if the sheriff had taken possession of the inventory on Granite's behalf before it was sold (rather than serving the garnishment), Granite would have had a lien on the inventory and that that lien would have been superior to that of the perfected IRS lien. It further implies that in such case, Granite's lien would have been superior to the trustee's interest in the inventory proceeds, except for the fact that there was a preference issue under 11 U.S.C. § 547, which as noted above, is not applicable in the case at bar because the Sheriff in the case at bar took possession of the vehicles (and thereby created a lien) more than 90 days prepetition.

In any event, applying the reasoning in *In re Riverfront* to the facts in the case at bar, because the Sheriff properly levied the vehicles by taking possession of them, a lien in Briggs & Tillman's favor was created in those vehicles and this lien was

superior to the Trustee's later lien under § 544.

In its discussion, the bankruptcy court in *In re Riverfront* relied upon three primary cases applying Missouri law: *McGarry v. Lewis Coal Co.*, 93 Mo. 237, 6 S.W. 81 (1887); *Vittert Constr. & Inv. Co. v. Wall Covering Contractors, Inc.*, 473 S.W.2d 799 (Mo.App.1971), *appeal denied* (Mo.1971); and *Dugan v. Missouri Neon & Plastic Adver. Co.*, 472 F.2d 944 (8th Cir.1973). A look at these cases is helpful in this case as well.

In *Vittert,* the Missouri Court of Appeals was asked to decide whether a judgment creditor who had served a garnishment upon a company who owed the debtor money on a contract had priority to those funds as against a subsequently perfected IRS lien. According to the Missouri Court of Appeals:

> It is evident that the [judgment creditor's] garnishment was served prior to the tax lien. The only issue presented by the government is whether the service of a garnishment in aid of execution creates a perfected lien under Missouri law upon an indebtedness owing to a judgment debtor. If such a lien is created the judgment creditor-garnisher would be a "judgment lien creditor" entitled to a priority over the federal tax lien filed after service of the garnishment summons. If on the other hand no lien is created by the service of the garnishment summons, the federal tax lien would take priority and the United States would be entitled to prevail.
>
> This court has previously passed upon the question presented in *Weiner v. Shredded Steel Products, Inc.*, [334 S.W.2d 390 (Mo.Ct.App.1960)]. We held that the service of the writ of garnishment created a lien upon money garnished that could not be impaired by subsequent action by others for the same fund. Garnishment on indebtedness has the effect of seizure.

*Vittert,* 473 S.W.2d at 804 (citation omitted).

Because the Court of Appeals concluded that service of a garnishment in aid of execution creates a perfected lien under Missouri law upon the indebtedness garnished, and then likened the garnishment situation to a seizure of personal property, it follows that levy by seizure of personal property creates a lien upon the levied property that cannot be impaired by subsequent action by others for the same fund, and as such, the lien created thereby is perfected. Accordingly, it seems that properly levied personal property cannot be reached by a trustee whose claim to that property arose subsequent to the judgment creditor's lien.

Likewise, the Eighth Circuit Court of Appeals in *Dugan* interpreted *Vittert* to hold that the lien obtained by properly garnishing intangible property was a perfected lien upon the indebtedness. The Eighth Circuit reasoned:

> *Vittert* held that the judgment creditor's service of garnishment in aid of execution created a perfected lien upon the indebtedness owed by the garnishee to the judgment debtor and that this lien was superior to a federal tax lien, the notice of which postdated the service of the garnishment summons. The Court reasoned in *Vittert* that the garnishment issued in aid of execution created a lien upon the debt owing to the judgment debtor that could not be impaired by subsequent action of others seeking the same fund that the garnishment on indebtedness has the effect of seizure.

*Dugan,* 472 F.2d at 949. The Eighth Circuit also likened a garnishment summons in aid of execution on intangible property to a levy of tangible personal property by seizure. As a result, the clear implication is that levy by seizure of personal property creates a perfected lien in the levied property.

This Court realizes that *In re Riverfront Beverage,* *Vittert,* and *Dugan* are all distinguishable from the case at bar because they involved garnishments rather

**94**

than seizure of vehicles. The Court further recognizes the distinction between the statutory tax liens in those cases and the hypothetical judicial lien attributed to the trustee by virtue of 11 U.S.C. § 544. Nevertheless, this Court believes that the discussion contained in those cases lends support to the conclusion that Briggs & Tillman's lien is superior to that of the Trustee by virtue of § 544 because in essence, those cases support the conclusion that when the Sheriff levied upon the debtor's vehicles by taking possession of them, a perfected lien was created in those vehicles giving Briggs & Tillman priority against subsequently arising liens in the same property.

Finally, Missouri's Uniform Commercial Code, which determines priority of security interests in property, tends to substantiate the conclusion that the Trustee did not obtain an interest superior to Briggs & Tillman's in the levied vehicles. Specifically, Mo.Rev.Stat. § 400.9–301, which provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected, defines a "lien creditor" as "a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes ... a trustee in bankruptcy from the date of the filing of the petition ..." Mo.Rev. Stat. § 400.9–301(3). According to this language, it appears that Briggs & Tillman and the Trustee are in the same category as lien creditors in terms of priority, and since Briggs & Tillman received its lien prior to the Trustee's hypothetical lien in the same property, Briggs & Tillman's lien would likely be superior.

*Conclusion*

With all that said, the bottom line is this Court is not entirely certain as to the relative priority of Briggs & Tillman's lien and the Trustee's lien under 11 U.S.C. § 544. As some courts have phrased the situation, the trustee is deemed to have a lien on all lienable property of the debtor. *See In re Westfall,* 227 B.R. at 737. As demonstrated above, an argument can certainly be made that the vehicles were not "lienable" and that Briggs & Tillman's interest in the vehicles is superior to that of the Trustee. In fact, if pressed to make a decision on that issue, based on the case law discussed above, the Court might well conclude that Briggs & Tillman's interest was superior to the Trustee's interest under 11 U.S.C. § 544, although the alternative is not overruled by any case law the Court has found.

As a result, the Court finds that the compromise proposed by the Trustee, which avoids further argument and briefing on this difficult issue at the expense of the estate, is proper and reasonable. The proposed compromise is therefore approved.