In re William M. BRANDERHORST
and Jennie M. Branderhorst,
Engaged in Farming, Debtors.

William M. BRANDERHORST and
Jennie M. Branderhorst, Engaged
in Farming, Appellants,

v.

CENTRAL IOWA PRODUCTION
CREDIT ASSOCIATION OF
NEWTON, IOWA, Appellee.

No. 87–1697.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 21, 1988.

Decided April 5, 1988.

matters exclusively within the province of the Jury.

Michael P. Mallaney, Des Moines, Iowa, for appellants.

Thomas H. Burke, Des Moines, Iowa, for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

PER CURIAM.

The issue in this case is whether a financing statement filed by appellee Central Iowa Production Credit Association (PCA) sufficiently identifies entitlements under a federal Payment–In–Kind (PIK) farm program, so as to perfect a security interest in such collateral under Iowa law. William

Tr. 647.

and Jennie Branderhorst (debtors) appeal from the district court [1] order affirming the bankruptcy court [2] decision that the security interest was perfected and thus not avoidable by the debtors under 11 U.S.C. § 544(a). We affirm, but for reasons different from those stated by the lower courts.

## I. BACKGROUND.

In 1982, the debtors obtained a loan from the Commodity Credit Corporation (CCC), an agency within the Department of Agriculture. The loan was secured by 28,504 bushels of corn from the debtors' 1981 and 1982 crops. In March 1983 the debtors executed an agreement with the CCC to participate in the PIK Diversion Program. Under the program farmers agree to devote cropland to approved conservation uses instead of planting certain crops, in exchange for compensation in the form of the commodity the farmer would have produced. *See* 7 C.F.R. Part 770 (1984).

On May 18, 1983, the debtors obtained a loan from PCA and executed a security agreement giving PCA a security interest in, among other things, "all proceeds or commodities paid to debtor by the U.S. Government under various farm programs in which debtor is a participant." PCA then filed a financing statement covering "grain on hand," "crops now growing or hereafter to be grown," "all proceeds or property owned or to be acquired," and other specific collateral.

On March 15, 1984, CCC delivered the debtors their entitlements under the PIK agreement by releasing its interest in 14,998 bushels of the previously encumbered corn. On August 8, 1984, the debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Their estate included the PIK corn and $24,000 in deficiency payments from a different CCC program. In September 1985 the debtors filed a complaint under 11 U.S.C. § 544(a) seeking to avoid the PCA's security interest in this property on the basis that the security interest was unperfected. The debtors claimed that the financing statement did not adequately describe the collateral under Iowa law.

The bankruptcy court determined that the deficiency payment, as "proceeds" of crops, was covered by the financing statement. The PIK corn was handled differently. Relying on cases applying Iowa law, the court determined that PIK entitlements are "general intangibles." The court concluded, however, that the catch-all phrase "all * * * property owned or to be acquired" in the financing statement provided sufficient notice of PCA's security interest in the PIK corn to perfect this interest under Iowa Code § 554.9402.

The district court affirmed the decision as to the CCC deficiency payments, but rejected the lower court's reasoning as to the PIK corn. Citing *In re DeSchamp*, 44 B.R. 517 (Bankr.N.D.Iowa 1984), the court held that catch-all phrases in a financing statement do not adequately describe collateral. The district court affirmed the bankruptcy court's judgment, however, on the ground that the financing statement's reference to "crops" and their "proceeds" would impose on a third party a duty to inquire further about PIK entitlements. The court reached this conclusion in light of decisions from other jurisdictions that PIK entitlements are proceeds of, or substitutes for, crops. The court noted the absence of binding precedent in the district ruling out this approach, but stopped short of stating that PIK entitlements are proceeds of crops.

The debtors filed this timely appeal. They challenge only the lower courts' determination that PCA's security interest in the PIK corn was perfected.

## II. DISCUSSION.

Under 11 U.S.C. § 544(a), the debtors, as debtors-in-possession, have the status of judicial lienholders, with priority over liens

---

1. The Honorable Donald E. O'Brien, United States District Judge for the Northern and Southern Districts of Iowa.

2. The Honorable Richard Stageman, United States Bankruptcy Judge for the Southern District of Iowa.

that have not been perfected. Iowa law provides that a security interest generally is perfected when a financing statement is properly filed. Iowa Code § 554.9302. The financing statement must indicate the types or describe the items of collateral to which it applies. *Id.* § 554.9402(1). The description need not be specific, as long as it reasonably identifies what is described. *Id.* § 554.9110. The financing statement may even contain minor errors, as long as they are not seriously misleading. *Id.* § 554.9402(8).

Because the purpose of the financing statement is to provide notice to third parties, the Supreme Court of Iowa has focused on the question of whether a description "make[s] possible the identification of the thing described." *First State Bank v. Waychus*, 183 N.W.2d 728, 730 (Iowa 1971). The court has also observed that property should be "described in such a manner as to enable third persons, aided by inquiries which the instrument itself indicates and directs, to identify the property." *First Nat'l Bank v. Francis*, 342 N.W.2d 468, 471 (Iowa 1984) (quoting *Producers Livestock Mktg. Ass'n v. Morrell & Co.*, 220 Iowa 948, 950, 263 N.W. 242, 243 (1935)).

The debtors in the present case argue that section 554.9402 requires, at a minimum, an accurate description of the collateral by type or item. They rely on decisions by federal courts that PIK entitlements are covered under Iowa law by security agreements referring to "accounts" or "general intangibles." *See In re Sunberg*, 729 F.2d 561, 562 (8th Cir.1984), *aff'g*, 35 B.R. 777 (Bankr.S.D.Iowa); *In re Liebe*,

41 B.R. 965, 967 (Bankr.N.D.Iowa 1984). Therefore, argue the debtors, the reference to "proceeds [of crops]" in PCA's financing statement does not describe PIK entitlements.

We do not believe, however, that this court is required to resolve, in this case, the issue of whether PIK payments may be described as "proceeds of crops." We think that the debtors' PIK corn was "grain on hand" as of March 15, 1984, at the latest. This was about five months before the bankruptcy petition was filed. Therefore, at the commencement of the case in August 1984, a third party contemplating the phrase "grain on hand" in the financing statement filed by PCA would have had notice that the 14,998 bushels of corn in the debtors' possession was encumbered.[3]

The Sixth Circuit relied on similar reasoning in *Apple v. Miami Valley Production Credit Association*, 804 F.2d 917 (6th Cir.1986). Declining to enter the "crops vs. general intangibles" fray, the court held instead that a security agreement filed as a financing statement covered PIK corn because it included a category labeled "Livestock, Farm Products and Personal Property" as well as a category for "Crops." Because the security agreement did not limit covered farm products to those grown on the debtors' land, the court concluded that the creditor had a perfected security interest in the right to receive 9,569 bushels of PIK corn. *Id.* at 919. We find this reasoning persuasive, and applicable by analogy to this case.[4]

---

3. To the extent that the debtors suggest that only definitions which appear in the U.C.C., unlike "grain on hand," qualify as "types" of collateral, we believe they are incorrect. A noted authority has observed:

  [I]f a secured party is financing a dealer's inventory which includes washing machines, television sets, phonographs, radios and refrigerators, it would be advisable for the notice to list each of these "types" of collateral separately. What differences add up to a "type" is a problem which all the notice filing statutes, including Article 9, appropriately refer to the courts for decision [footnote omitted].

  G. Gilmore, 1 Security Interests in Personal Property § 15.3 at 477 (1965).

4. Although this approach may raise the question of *when* the security interest would have been perfected by the reference to "grain on hand," the answer to this question does not seem to be of consequence in this case, because the debtors acquired the PIK corn about five months prior to their bankruptcy petition. In any event, a change in the character of collateral that results in delayed perfection has been upheld in a case in which, as here, there was an after-acquired property clause in the security agreement. *See United States v. Smith*, 832 F.2d 774, 777 (2d Cir.1987) (although interest in "crops" was unperfected, security interest in "farm products" was perfected once crops were harvested and stored by debtors).

## III. CONCLUSION.

The notice function of the financing statement does not obviate the requirement of a description by "type" or "item." The financing statement reference to "grain on hand" sufficiently described the type of collateral to perfect the security interest in the PIK corn well in advance of the commencement of the case.

Accordingly, we affirm the order of the district court.