**In re Gary Allen STANLEY, Debtor.**

**Erlene W. Krigel, Trustee, Plaintiff/Appellee,**

**v.**

**Mercedes–Benz Credit Corporation, Defendant/Appellant.**

**Bankruptcy No. 98–40004–1. Adversary No. 98–4153–1. Civ. No. 99–0261–CV–W–1.**

United States District Court, W.D. Missouri, Western Division.

Feb. 29, 2000.

510

Christine Marie Donnelly, Krigel & Krigel, Kansas City, MO, for plaintiff.

Geoff W. Hetley, Garrison, Czeschin & Ginsberg, Merriam, KS, for defendants.

**ORDER**

WHIPPLE, District Judge.

Pending before the Court is Mercedes–Benz Credit Corporations' ("MBCC") appeal from a judgment of the bankruptcy court in favor of Trustee Erlene W. Krigel ("the Trustee"). The bankruptcy court held that the Trustee could avoid MBCC's security interest in Debtor Gary Allen Stanley's ("Debtor") 1995 Peterbilt tractor because the security interest was not perfected at the time Debtor filed his bankruptcy petition. MBCC argues that it perfected its security interest by having the security interest noted on the tractor's certificate of title, which was issued to Debtor by the state of Kansas. The bankruptcy court held that the notation of MBCC's security interest on the Kansas certificate of title did not constitute perfection because Kansas had no authority to issue a certificate of title to Debtor's tractor. At the time Debtor purchased the tractor and applied for his title, he resided in Iowa. Iowa law requires its residents to title their vehicles in Iowa. The Court that the bankruptcy court reached its decision in error. For the reasons stated below, the bankruptcy court's judgment in favor of the Trustee is REVERSED.

**I. FACTUAL BACKGROUND**

At all times relevant to this appeal, Debtor worked as an over-the-road truck driver. Prior to May 15, 1997, Debtor was employed by Don Miller Trucking, L.L.C., in Hugoton, Kansas. Because of his itinerant life as a truck driver, Debtor did not "live" in any particular state. He stored his belongings at his boss' house in Hugoton, Kansas; he received mail at his girlfriend's home in Altoona, Iowa and kept his pickup truck there. Debtor held an Iowa drivers' license, registered his pickup truck in Iowa, maintained an Iowa bank account, and listed the Altoona, Iowa address on his tax returns.

On May 15, 1997, Debtor quit working for Don Miller Trucking. He purchased a used, 1995 Peterbilt tractor from the Kansas Truck Center ("the Dealer") in Liberal, Kansas. To obtain financing for his purchase, Debtor completed a retail credit application with MBCC and executed a retail installment contract-security agreement with the Dealer on a form supplied by MBCC. When Debtor's purchase was complete, the Dealer immediately assigned Debtor's retail installment contract-security agreement to MBCC. On the same

day, Debtor executed an agreement with National Carriers, Inc. under which Debtor leased his new tractor to National Carriers and agreed to operate it as an independent contractor. National Carriers forwarded Debtor's application for an original certificate of title to the state of Kansas. Debtor's title application listed MBCC as a secured party. On all relevant documents—the credit application, the installment sales contract-security agreement, the independent contractor agreement and equipment lease, and the application for certificate of title—Debtor listed his address in Altoona, Iowa. On June 27, 1997, the state of Kansas issued a certificate of title for Debtor's tractor with Debtor's Altoona, Iowa address listed. MBCC was listed as a secured party.

In June or July of 1997, Debtor split-up with his girlfriend. He changed his mailing address to a friend's residence in Raytown, Missouri. Debtor maintained this Raytown, Missouri address through the remainder of 1997. Debtor did not, however, retitle or register his pickup truck or tractor in Missouri. He did not obtain a Missouri drivers' license. In October 1997, while using his Raytown, Missouri address, Debtor terminated his independent contractor arrangement with National Carriers and entered into a similar arrangement with Sports Associates of Kansas City, Inc. in Kansas City, Missouri. Debtor continued to use the Raytown, Missouri address in January 1998, when he filed his voluntary petition for bankruptcy in the Western District of Missouri. Debtor testified that sometime after filing for bankruptcy, he opened a bank account in Raytown, Missouri. In March 1998, however, Debtor reconciled with his girlfriend, married her, and resumed his use of her Altoona, Iowa address. Debtor filed 1997 tax returns in April 1998 that listed his home address in Altoona, Iowa. Along with his federal return, Debtor filed returns for Kansas and Iowa but not for Missouri. In May 1998, Debtor terminated his arrangement with Sports Associates of Kansas City and executed a new independent contractor agreement with National Carriers. Debtor listed his Altoona, Iowa address on the new agreement. Debtor testified that he now considers Iowa to be his true "home."

On August 13, 1998, the Trustee filed a Complaint against MBCC seeking to void MBCC's security interest in Debtor's tractor on grounds that it was unperfected at the time Debtor filed his bankruptcy petition. The bankruptcy court issued a judgment and order on December 9, 1998 in favor of the Trustee. On January 11, 1999, the bankruptcy court reaffirmed its decision in favor of the Trustee.

## II. STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *In re Scarborough*, 171 F.3d 638, 641 (8th Cir.), *rehearing and suggestion for rehearing en banc denied* (1999); *In re Hen House Interstate, Inc.*, 150 F.3d 868, 870 (8th Cir.1998); Fed.R.Bankr. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). A finding is clearly erroneous only if the reviewing court is left with a definite conviction that a mistake has been committed. *In re Sherman*, 67 F.3d 1348, 1353 (8th Cir.1995). Further, after reviewing the bankruptcy court's decision, a district court may affirm, modify, or reverse the judgment, order, or decree or remand with instructions for further proceedings. Fed.R.Bankr. 8013.

## III. DISCUSSION

The bankruptcy court found that Debtor was a resident of Iowa at the time he purchased his tractor and applied for a certificate of title in Kansas. After reviewing the record and the parties' briefs, the Court does not find this determination to be clearly erroneous. The Court will

affirm the bankruptcy court's finding of fact that Debtor was a resident of Iowa at the time he purchased his tractor and applied for a certificate of title in Kansas.

The parties' dispute focuses upon the bankruptcy court's choice of law. The bankruptcy court determined that because Debtor was an Iowa resident at the time he purchased the vehicle, Iowa law governed the perfection of MBCC's lien. The Court will reverse the bankruptcy court's legal conclusion on a number of grounds. First, the bankruptcy court failed to follow the necessary analytical process for determining which state's law governs the Trustee's ability to avoid MBCC's security interest. Had the bankruptcy court done so, it would have first looked to the law of Missouri, where Debtor filed his voluntary petition for bankruptcy. Second, regardless of whether the bankruptcy court first looked to the law of Missouri, Iowa or Kansas, the court erred in concluding that the Uniform Commercial Code—Article 9 choice of law provision—which all three states have adopted—did not mandate the use of Kansas law to determine perfection of MBCC's lien. Third, the bankruptcy court erred in concluding that Kansas had no authority to issue a certificate of title to Debtor's tractor. Fourth, under Kansas law, MBCC's security interest was properly perfected and takes priority over the Trustee's interest as hypothetical lien creditor.

## A. Initial Considerations—Application of Missouri Law.

 The Trustee brought this action against MBCC pursuant to 11 U.S.C. § 544(a), which is commonly referred to in bankruptcy parlance as the "strong-arm clause." *See e.g. Kingsley v. First American Bank (In re Kingsley)*, 865 F.2d 975, 977 n. 2 (8th Cir.1989); *In re Arithson*, 175 B.R. 313, 318 (Bankr.D.N.D.1994). Section 544(a) vests a bankruptcy trustee with

the status of a hypothetical judicial lien creditor without knowledge, giving the Trustee the right to avoid any obligation incurred by the debtor that would be voidable by an actual creditor with a judicial lien at the time the bankruptcy petition was filed. *See Branderhorst v. Central Iowa Production Credit Ass'n (In re Branderhorst)*, 843 F.2d 311, 312 (8th Cir. 1988); *Norwest Bank v. Bergquist (In re Rolain)*, 823 F.2d 198, 199 (8th Cir.1987). Although federal law grants bankruptcy trustees the rights and status of hypothetical lien creditors, state law is used to determine the actual rights and priorities of such lien creditors. *See Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531, 1532–33 (10th Cir.1987); *Havee v. Belk*, 775 F.2d 1209, 1218–19 (4th Cir.1985); *In re Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983). *See also In re Clifford*, 566 F.2d 1023 (5th Cir.1978); *In re Cushman Bakery*, 526 F.2d 23 (1st Cir.1975) (whether security interest has been perfected against trustee in bankruptcy is a question of state law), *cert. denied*, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976); *In re Gringeri Brothers Transportation Co.*, 14 B.R. 396 (Bankr.D.Mass. 1981). In this respect, a bankruptcy trustee's powers to avoid the debtor's obligations are derivative; the extent of the trustee's powers as a hypothetical lien creditor are defined by substantive state law. *See Norwest Bank v. Bergquist (In re Rolain)*, 823 F.2d 198, 199 (8th Cir. 1987); *In re Arithson*, 175 B.R. 313, 318 (Bankr.D.N.D.1994). Stated somewhat differently, § 544(a) does not confer on the bankruptcy trustee any greater rights than those accorded to an actual lien creditor without knowledge by the applicable law of the state where the bankruptcy petition was filed. *See e.g. In re Nies*, 183 B.R. 866, 869 (Bankr.D.N.D.1995).

 Debtor commenced this case in the Western District of Missouri.[1] Conse-

---

1. Jurisdiction is proper in Missouri because, for the 180–day period preceding Debtor's commencement of this bankruptcy action,

Debtor maintained a residential address in Missouri and worked for a Missouri company. While Debtor's career choice did not lend

quently, Missouri is the jurisdiction where the Trustee obtained the status of hypothetical judicial lien creditor. As a hypothetical lien creditor in Missouri, the Trustee became empowered to avoid any competing claims which a creditor with a judicial lien would be permitted to avoid under applicable Missouri law on lien priority. 11 U.S.C. § 544(a); *In re Chaseley's Foods*, 726 F.2d 303, 307 (7th Cir. 1983).

### B. Missouri Choice of Law—Analysis of Kansas Certificate of Title Law.

■ Having determined that Missouri law governs the rights of the Trustee as hypothetical lien creditor to avoid competing claims, the Court turns to section 400.9–103 of the Missouri Revised Statutes to see what state's law would apply to the Debtor's collateral under Missouri's choice of law provision. Section 400.9–103(2) appears to apply in this case. Subsection (a) of that section "applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required ·as a condition of perfection." Mo. Rev.Stat. § 400.9–103(2)(a).[2]

Debtor's tractor is unquestionably a "good" under the commercial law of any state whose law might possibly apply in this case. *See* Mo.Rev.Stat. § 400.9–105(h); Iowa Code Ann. § 544.9105(h); Kan.Stat.Ann. § 84–9–105(h). The parties do not dispute that Debtor's tractor was "covered by" a Kansas certificate of title. Kansas issued a certificate of title to Debtor's tractor on June 27, 1997. Debtor did not retitle the tractor, or surrender the title, and the title was still valid when Debtor filed his bankruptcy petition. Con-

sequently, section 400.9–103(2)(a) of the Missouri Revised Statutes applies if: (1) the Kansas certificate of title to Debtor's tractor was "issued under" a Kansas statute, and (2) Kansas law requires indication of a security interest on the certificate as a condition of perfection.

### 1. The certificate of title was "issued under" Kansas statutes.

The bankruptcy court held that Kansas lacked jurisdiction to issue a certificate of title. Although the bankruptcy court reached this conclusion in the context of a determination that subsection (b) of U.C.C. section 9–103 did not apply in this case, the holding might also be construed as a determination that the Kansas certificate of title was not "issued under" a statute of Kansas as contemplated by subsection (a). Regardless, the conclusion was wrong.

Kansas statutory sections 8–126 to 8–149 establish general rules for the registration and titling of motor vehicles in Kansas. Section 8–127 establishes the general rule that

> [e]very owner of a motor vehicle ... intended to be operated upon any highway in this state, whether such owner is a resident of this state or another state, or such motor vehicle is based in this state or another state shall ... apply for and obtain registration in this state under the provisions of K.S.A. 8–126 to 8–149, inclusive, and acts amendatory thereof or supplemental thereto.

Kan.Stat.Ann. § 8–127(a). Section 8–129 requires an applicant "for the registration of a vehicle required to be registered ... to submit a statement certifying that such person has a certificate of title for the motor vehicle ... or file an application

---

itself to the concept of a "residence," no party to this action has attempted to establish that Debtor did not live and intend to remain in Missouri, as well as work for a Missouri company, at the time he filed his bankruptcy petition. The Court finds that under 28 U.S.C. § 1408, jurisdiction was proper in Missouri.

**2.** The Court notes that even though the bankruptcy court erred in failing to apply Missouri's choice of law provision at this point in its analysis, the choice of law provisions in Iowa and Kansas are identical to Missouri's. *See* Iowa Code Ann. § 544.9103(2); Kan.Stat. Ann. § 84–9–103(2). The outcome would be the same.

therefor." Kan.Stat.Ann. § 8–129(b). Section 8–135 provides that an "application for certificate of title shall be made by the owner or the owner's agent upon a form furnished by the division and shall state all liens or encumbrances thereon, and such other information as the division may require." Kan.Stat.Ann. § 8–135(c)(1). The conjunction of sections 8–127, 8–129, and 8–135 clearly contemplates that non-residents such as Debtor *must* register their vehicles in Kansas and *may* apply for a certificate of title from Kansas.

These statutes would undoubtedly have applied to Debtor, who, on the day he applied for a certificate of title from Kansas, intended to drive for National Carriers based in Kansas. However, on the day that Debtor applied for his certificate of title, he leased his tractor to National Carriers. Debtor's independent contractor agreement and equipment lease with National Carriers caused registration of the tractor to be governed by Kansas' Apportioned Fleet Registration law, sections 8–1,101 through 8–1,123. These sections are supplementary to, and part of, the statutory sections outlined above. Kan.Stat.Ann. § 8–1,123. Section 8–1,101 provides that an

> owner engaged in operating a fleet in this state in interstate commerce may, in lieu of registration of such fleet under the provisions of K.S.A. 8–126 to 8–149, . . . register such fleet for operation in this state upon payment of fees prescribed by this act and the filing of an application with the division of vehicles.

Kan.Stat.Ann. § 8–1,101(a). Section 8–1,100 states that when "a commercial vehicle is the subject of a lease, the lessee and operator of such vehicle, and not the holder of the legal title shall be deemed the owner." Kan.Stat.Ann. § 8–1,100. According to these two provisions, the lease of Debtor's tractor to National Carriers made it part of National Carriers' fleet and subject to apportioned registration under Kansas law.

Section 8–1,111 of the Kansas Apportioned Fleet Registration law provides that

> [v]ehicles required to be registered as part of a fleet under the provisions of this act, which vehicles are based in the state of Kansas, shall be required to have a Kansas negotiable certificate of title or be covered by a negotiable title issued by another jurisdiction. In those cases where it is necessary to secure a Kansas certificate of title to a vehicle which is part of a fleet under the provisions of K.S.A. 8–1,101 to 8–1,123, inclusive, the division is authorized to issue such title upon the payment of the fee prescribed by law and the delivery of the necessary papers to support the issuance of such title. No Kansas title shall be required for a vehicle which is subject to a lease, if the lessor thereof has an outstanding negotiable title to such vehicle, issued by this state or another jurisdiction.

Kan.Stat.Ann. § 8–1,111. Applying this statute to Debtor's tractor, Kansas law required the tractor to have a certificate of title or be covered by a certificate of title from another jurisdiction. At the time Debtor and National Carriers applied for registration of the tractor, it was subject to a lease and Debtor, as lessor, did not have an "outstanding negotiable title" to the tractor. The language of section 8–1,111 permitted Debtor and National Carriers to apply for the certificate of title in Kansas and expressly authorized issuance of such title upon payment of the appropriate fee and delivery of the necessary papers. The Kansas certificate of title was "issued under" section 8–1,111, which was properly applied pursuant to sections 8–126 to 8–149 and sections 8–1,100 to 8–1,123.

### 2. *Kansas law requires indication of a security interest on the certificate of title as a condition of perfection.*

Two separate statutory provisions in Kansas mandate the inclusion of a security interest on a certificate of title issued un-

**516**

der Kansas law. As the Court previously noted, section 8–135 provides that an "application for certificate of title shall be made by the owner or the owner's agent upon a form furnished by the division and shall state all liens or encumbrances thereon, and such other information as the division may require." Kan.Stat.Ann. § 8–135(c)(1). That section further states that the "certificate of title shall ... contain a statement of any liens or encumbrances which the application shows, and such other information as the division determines." *Id.* With regard to perfection, section 84–9–302 provides that

> (3) A security interest in:
>
> . . . . .
>
> (c) a vehicle ... subject to a statute of this state which requires indication on a certificate of title ... of such security interests in such vehicle:
>
> . . . . .
>
> Can be perfected only by presentation, for the purpose of ... such indication, of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official.

Kan.Stat.Ann. § 84–9–302. The conjunction of sections 84–9–302 and 8–135(c) clearly mandate indication of a security interest on the certificate of title as a condition of perfection. Debtor's tractor was subject to Kansas' registration statutes, which permitted him to apply for a Kansas certificate of title and which required, with the application for a certificate of title, indication of MBCC's security interest in the tractor so that the security interest could be noted on the certificate.

**3. Under Missouri's choice of law provision, Kansas law governs perfection and the effect of perfection or non-perfection.**

Based on the foregoing analysis, section 400.9–103(2)(a) of the Missouri Revised Statutes applies to Debtor's tractor.

Debtor's tractor was: (1) a good, (2) covered by a certificate of title, (3) issued under a statute of Kansas, (4) and Kansas law required indication of a security interest on the certificate as a condition of perfection. *See* Mo.Rev.Stat. § 400.9–103(2)(a). Because subsection (a) applies to Debtor's tractor, subsection (b) of that statute determines which state's law actually governs perfection of MBCC's security interest. Subsection (b) mandates that

> perfection and the effect of perfection or non-perfection of the security interest are governed by the law (including the conflict of law rules) of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate.

Mo.Rev.Stat. § 400.9–103(2)(b). This subsection dictates that Kansas law should govern the Court's determination of whether MBCC's security interest was perfected.

The Kansas Division of Motor Vehicles issued the certificate of title to Debtor's tractor. As the Court has already discussed, Kansas had the statutory authority to issue the certificate of title. Although Debtor "registered" his tractor in Missouri when he began to work for Sports Associates of Kansas City, such action does not prevent application of Kansas law in this case. Debtor used his Kansas title to register his tractor in Missouri; he did not retitle the tractor. Such "non-title registration" is allowed under Missouri law. *See* Mo.Rev.Stat. 301.190.1 ("No certificate of registration of any motor vehicle ... shall be issued by the director of revenue unless the applicant therefor shall make application for and be granted a certificate of ownership of such motor vehicle [ ], or shall present satisfactory evidence that such certificate has been previously issued to the applicant for such motor vehicle [ ]."). Moreover, the non-title registration that Debtor obtained in Missouri does not

fall within the statutory meaning of the term "registration" as it is used in section 400.9–103(2)(b). *See e.g. In re Stinnett,* 241 B.R. 599, 601 (Bankr.W.D.Ark.1999) (stating that Ark.Code Ann. § 4–9–103(2)(b) serves to continue perfection of a security interest noted on a foreign certificate of title until a certificate has been issued by another jurisdiction); *In re Males,* 999 F.2d 607, 611–12 (2nd Cir.1993) (agreeing that mere registration in new state, without retitling, does not void perfection law of state that issued certificate of title); *In re Nunley,* 21 B.R. 826 (Bankr.E.D.Tenn.1982) (same conclusion under Tennessee choice of law provision); *In re Aguiar,* 116 B.R. 223, 224 (Bankr.D.Idaho 1990) (same conclusion under Idaho choice of law provision); *Strick Corp. v. Eldo–Craft Boat Co., Inc.,* 479 F.Supp. 720, 725–26 (W.D.Ark.1979) (same). "Registration" as it is used in section 400.9–103(2)(b) contemplates issuance of a new certificate of title by the later jurisdiction, not mere administrative registration of the subject vehicle. *In re Males,* 999 F.2d at 612 (recognizing that an interpretation in which " 'registration' as used in [U.C.C. §] 9–103(2)(b) has occurred only when a new certificate of title has been issued … makes sense even though it does some violence to the complex and messy sentence set out in (2)(b). In a day when virtually every vehicle has a certificate of title and only one certificate of title, it is inconceivable that any lender will be misled by the debtor's mere registration of his truck in a new state."). Under these facts, the bankruptcy court should have concluded that Missouri's choice of law provision mandates application of Kansas law to determine perfection of MBCC's security interest in Debtor's tractor.

## C. Priority Between MBCC and The Trustee Under Kansas Law.

█ As the Court previously noted, Kansas law mandates that a security interest in a vehicle titled in Kansas must be perfected by presentation of the appropri-

ate documents and payment of the appropriate fee to the appropriate public official, or acceptance by the public official of the application documents. *See* Kan.Stat.Ann. §§ 8–135 and 84–9–302(3). The parties agree that these steps were accomplished in this case. Kansas issued a certificate of title to Debtor's truck that indicated MBCC's security interest on it. Accordingly, MBCC's security interest was properly perfected under Kansas law.

In addition to governing perfection, Kansas law governs the effect of perfection or non-perfection. Mo.Rev.Stat. § 400.9–103(2)(b); Kan.Stat.Ann. § 84–9–103(2)(b). Kansas law provides that perfected security interests have priority over the interests of creditors who obtain their judicial lien on the property after the security interests were perfected. Kan.Stat.Ann. § 84–9–301(b). Consequently, the Trustee's interest as hypothetical lien creditor is subordinate to MBCC's security interest, and the judgment of the bankruptcy court must be reversed.

## D. A Final Comment on the Bankruptcy Court's Application of Iowa Law.

█ The foregoing analysis reveals the bankruptcy court's error in reaching Iowa law to determine the outcome of this case. Clearly, Missouri law should have started the court's analysis. Even under Iowa's choice of law provision, however, the above analysis should reach the same result. The bankruptcy court applied Iowa law instead of Kansas law because it spotted the apparent conflict between state statutes that require residents to title their vehicles in their home state and the statutes of other states that permit non-residents to title their vehicles away from home. The conflict exists, and individuals who choose to title their vehicles in a state where they do not reside risk the penalties and/or fines they might incur from their state of residence. *See e.g. In re Stinnett,* 241 B.R. 599, 602 (Bankr.W.D.Ark.1999) ("The appropriate outcome for debtor's

failure to comply with Arkansas state law is not to punish the creditor nor provide a windfall to the general unsecured creditors or others who have proper notice of the security interest. If the state chooses to enforce the relevant provisions of the Arkansas law, the appropriate and existing remedies are prosecution of the debtor."). Nevertheless, where the act of titling in a non-resident state is permitted for owners of vehicles that must be registered in that particular state, the Court concludes that Article 9's uniform language permits perfection through the non-resident state's certificate of title laws, so long as those laws require indication of security interests on the certificate as a condition of perfection. This uniform language has been adopted by most if not all states; it certainly exists in the laws of Missouri, Kansas and Iowa. The language comports with Article 9's purpose of adopting perfection through certificates of title: "A potential creditor need look to only one place—the certificate of title, regardless of issuing state—to discover [a] prior security interest.... If the debtor cannot or will not produce the title certificate, the potential creditor is immediately on notice that he acts at his own risk." *In re Angier,* 684 F.2d 397, 399 (6th Cir.1982) (quoting *In re Paige,* 679 F.2d 601 (6th Cir.1982)).[3]

## IV. ORDER

For the reasons stated above, the judgment of the bankruptcy court is REVERSED.

---

**3.** As an interesting aside, the Court notes that Revised Article 9 clearly resolves the problems presented in this case. Revised section 9–303, which substantially modifies current section 9–103(2), "applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor." Model U.C.C. § 9–303(a) (1999). The Official Comment to this section states that the change would clearly recognize the "certificates of a jurisdiction having no other contacts with the goods or the debtor. This result comports with most of the reported cases on the subject and with contemporary business practices in the trucking industry." Official Comment 2 to the Model U.C.C. § 9–303 (1999).