## In re O. Wayne MEADE and Sharron S. Meade, Debtors.

### Erlene W. Krigel, Chapter 7 Trustee in Bankruptcy, Plaintiff,

v.

### Paccar Financial Corporation, Defendant.

**Bankruptcy No. 99–42714.**
**Adversary No. 99–4289.**

United States Bankruptcy Court,
W.D. Missouri.

June 22, 2000.

---

6. *Id.* at § 404.047.

7. 898 S.W.2d 139 (Mo.Ct.App.1995).

8. *Id.* at 140.

9. *Id.* at 140–41.

10. *Id.*

794

Erlene W. Krigel, Krigel & Krigel, P.C., Kansas City, MO, for plaintiff.

Jennifer L. Benedict, Phillip C. Rouse, Douthit Frets Rouse and Gentile, Kansas City, MO, for defendant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Erlene Krigel, the Chapter 7 trustee in this bankruptcy case, filed this adversary proceeding asking this Court to set aside a transfer and to determine the validity, priority, and extent of three liens held by Paccar Financial Corporation (Paccar). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will find that

Paccar has validly perfected liens, therefore, I will enter judgment in favor of Paccar.

### FACTUAL BACKGROUND

Prior to filing this Chapter 7 bankruptcy case, debtors Wayne and Sharron Meade, who at all times relevant to the issues involved in this proceeding have resided in Clay County, Missouri, owned over-the-road tractor/trailer rigs. Three such tractors are the subject of this adversary proceeding. On December 11, 1998, the Meades entered into a Security Agreement/Retail Installment Contract (Contract # 1) with Kansas City Peterbilt as to a 1996 Peterbilt tractor Model 379, VIN 1XP5DB8X6TN39001 (Tractor # 1). Kansas City Peterbilt, which is located in Kansas City, Kansas, immediately assigned all rights, title, and interests in Contract # 1 to Geis Financial, L.L.C. (Geis). By further assignment on that same date, Geis assigned all rights, title, and interest in Contract # 1 to Paccar. On January 10, 1999, Kansas City Peterbilt filed an Application for Title as to Tractor # 1 with the Kansas Department of Revenue, Division of Vehicles. Paccar was duly noted on the Certificate of Title as the lien holder. Contract # 1 reflects that the Meades resided in Clay County, Missouri. On December 14, 1998, the Meades leased Tractor # 1 to Copp, Inc., (Copp) a Kansas corporation, pursuant to a Common Carrier Lease Agreement. On May 18, 1999, the Meades leased Tractor # 1 to National Carriers, Inc. (National), a Kansas Corporation, pursuant to an Independent Contractor Agreement and Equipment Lease.

On May 27, 1997, the Meades purchased a 1997 Peterbilt tractor VIN 1XP5DB9X6VD408488 (Tractor # 2) from Kansas City Peterbilt. Associates Commercial Corporation (Associates) provided the financing for this purchase. At the time of purchase, Tractor # 2 was leased to Nestle Transportation Company (Nestle), a Delaware Corporation, pursuant to a Contractor Operating Agreement dated January 7, 1997. Kansas City Peterbilt filed out the Application for Title on Tractor # 2. On June 18, 1997, Nestle filed the Application for Title with the Secretary of State for the State of Illinois indicating the Meades are owners of Tractor # 2, but using the Nestle's address as the Meades' address. The Certificate of Title, issued by the State of Illinois, listed Associates as a secured party. On December 11, 1998, however, when the Meades purchased Tractor # 1, they also executed a Direct Loan Security Agreement (Contract # 2) with Geis. Geis then assigned all rights, title, and interest in Contract # 2 to Paccar. Another Application for Title was filed with the State of Illinois requesting a change in lienholder from Associates to Paccar. On February 8, 1999, the State of Illinois issued a Certificate of Title naming the Meades as owners and Paccar as lienholder on Tractor # 2. On May 28, 1997, Nestle acknowledged receipt of Tractor # 2 from the Meades. On May 15, 1998, the Meades leased Tractor # 2 to Copp pursuant to a Common Carrier Lease Agreement. On September 30, 1999, the Meades leased Tractor # 2 to National, pursuant to an Independent Contractor Agreement and Equipment Lease.

In May of 1995 the Meades purchased a 1996 Peterbilt tractor Model 379, VIN 1XP5DB9X6TO376199 (Tractor # 3) from Kansas City Peterbilt. Associates Commercial Corporation financed the purchase of Tractor # 3. On May 31, 1995, the State of Oklahoma issued a Certificate of Title for Tractor # 3 that listed Associates as the lienholder. Even though the Meades lived in Clay County, Missouri at the time, Kansas City Peterbilt suggested Tractor # 3 be titled in Oklahoma to avoid the payment of sales tax. In order to accomplish this, the application for a certificate of title used a post office box owned by a third party for the Meades' address. On April 12, 1996, the Meades leased Tractor # 3 to Nestle, pursuant to a Contractor Operating Agreement. On April 20, 1998, the Meades leased Tractor # 3 to Copp,

pursuant to a Common Carrier Lease Agreement. On December 11, 1998, the Meades executed a Direct Loan Security Agreement (Contract # 3) with Geis as to Tractor # 3. On that same date, Geis assigned all rights, title, and interest in Contract # 3 to Paccar. On December 22, 1998, Paccar filed a Lien Entry Form with the State of Oklahoma. The State of Oklahoma noted on the Certificate of Title that Paccar is the lienholder. On May 18, 1999, the Meades leased Tractor # 3 to National pursuant to an Independent Contractor Agreement and Equipment Lease.

On July 9, 1999, the Meades filed this Chapter 7 bankruptcy case. Prior to filing the case, the Meades surrendered the three tractors to Paccar. Paccar filed a motion to lift the automatic stay as to the tractors, and the trustee filed this adversary proceeding asking Paccar to turn over the three tractors as property of the estate. The trustee claims that Paccar never properly perfected its security interest in the three tractors because it failed to register the tractors in the state where the owners were located, therefore, the liens are subject to the trustee's avoidance power. Paccar, in turn, argues that at all times the name of the secured party was easily discernible from the Certificates of Title, as required by the Uniform Commercial Code (the UCC), therefore, its interest is properly perfected.

■ This Court scheduled a trial in this adversary for February 22, 2000. The parties, however, submitted the matter for decision based upon stipulated facts and exhibits. Both parties filed trial briefs and reply briefs, followed by Defendant's Supplemental Trial Brief filed on March 23, 2000. In its Supplemental Trial Brief, Paccar directed this Court's attention to

an opinion, *Krigel v. Mercedes–Benz Credit Corporation (In re Stanley)*,[1] issued by the Honorable Dean Whipple, Chief Judge, United States District Court–Western District of Missouri. In that opinion Judge Whipple reversed the bankruptcy court and held that:

> where the act of titling in a non-resident state is permitted for owners of vehicles that must be registered in that particular state, the Court concludes that Article 9's uniform language permits perfection through the non-resident state's certificate of title laws, so long as those laws require indication of security interests on the certificate as a condition of perfection.[2]

The trustee chose not to file a response to the Defendant's Supplemental Trial Brief. In light of Judge Whipple's opinion, this Court is now ready to rule on this matter.

## DISCUSSION

In *In re Westfall*,[3] this Court addressed the issue of lien perfection by the notation of the lien on a certificate of title issued by a non-resident state. At the time *Westfall* was decided, the other two sitting bankruptcy judges in the Western District of Missouri had both held that in order for a lien to be perfected, it must be noted on a certificate of title issued by the state in which the debtor/owner resided.[4] In *Maxwell*, Judge Koger held that section 310.600.3 of Missouri's Revised Statutes was controlling.[5] That section presently holds that a motor vehicle purchased in another state and removed to Missouri within thirty days of purchase triggers Missouri's lien perfection statutes:

> 3. If a motor vehicle or trailer is subject to a lien or encumbrance when brought into this state, the validity and

---

1. 249 B.R. 509 (W.D.Mo.2000) (referencing Bankr. Case No. 98–40004 and Adv. Case No. 98–4153).

2. *Id.* at 518.

3. 227 B.R. 734 (Bankr.W.D.Mo.1998).

4. *See Krigel v. Mercedes–Benz Credit Corporation (In re Stanley)*, decided by the Honorable Karen M. See and *Carlson v. Seeley (In re Maxwell)*, 89 B.R. 46 (Bankr.W.D.Mo.1988), decided by the Honorable Frank W. Koger.

5. 89 B.R. at 47.

effect of the lien or encumbrance is determined by the law of the jurisdiction where the motor vehicle or trailer was when the lien or encumbrance attached, subject to the following:

(1) If the parties understood at the time the lien or encumbrance attached that the motor vehicle or trailer would be kept in this state and it was brought into this state within thirty days thereafter for purposes other than transportation through this state, the validity and effect of the lien or encumbrance in this state is determined by the law of this state;

(2) If the lien or encumbrance was perfected under the law of the jurisdiction where the motor vehicle or trailer was when the lien or encumbrance attached, the following rules apply:

(a) If the name of the lienholder is shown on an existing certificate of title or ownership issued by that jurisdiction, his lien or encumbrance continues perfected in this state; [6]

In both *Westfall* and *Maxwell,* the motor vehicles were immediately removed to Missouri after purchase in another state. Moreover, the motor vehicles were kept in Missouri after purchase, save for the time they were involved in transporting goods through other states.

▪ In this case, however, there is no dispute that the three tractors were leased to various leasing companies as soon as they were purchased. None of the leasing companies are headquartered in Missouri. In fact, the trustee does not contend that any of the tractors were ever housed in Missouri, though the debtors have at all times been residents of Missouri. For this reason, I find that the exception found in section 301.600.3(1) of Missouri's Revised Statutes does not control here. Instead, I find that Paccar's lien as to Tractor # 1

attached in Kansas and the validity of that lien is subject to the law of the State of Kansas. Based upon Judge Whipple's holding in *Stanley,* I find that Kansas is a state that permits titling of motor vehicles by nonresidents. Paccar's lien as to Tractor # 1 is, thus, properly perfected, and I find in favor of Paccar as to that lien.

▪ I also find that Paccar's lien as to Tractor # 2 attached in Illinois and the validity of that lien is subject to the laws of the State of Illinois, pursuant to section 301.600.3 of Missouri's Revised Statutes. Section 5/3–101 of Illinois Compiled Statutes provides that the owner of a motor vehicle driven in Illinois must obtain a certificate of title for that motor vehicle if the owner has not done so in another state:

(A) Except as provided in Section 3–102, every owner of a vehicle which is in this State and for which no certificate of title has been issued by the Secretary of State shall make application to the Secretary of State for a certificate of title of the vehicle.[7]

Moreover, every vehicle driven in Illinois is subject to registration and certificate of title provisions in the State of Illinois:

Every motor vehicle ... when driven or moved upon a highway shall be subject to the registration and certificate of title provisions of this Chapter.[8]

Since Illinois has the jurisdiction and authority to require that nonresidents register every motor vehicle driven on an Illinois highway, pursuant to Judge Whipple's holding in *Stanley,* I find that Illinois has jurisdiction to issue a valid certificate of title to a nonresident owner. Illinois requires that a lien be perfected by notation on the certificate of title. Paccar's lien is so noted as to Tractor # 2. As such, Paccar has a validly perfected lien as to Tractor # 2, and I find in Paccar's favor as to Tractor # 2.

---

6.  Mo.Stat.Ann. § 301.600.3 (Supp.2000).

7.  Ill.Comp.Stat. Chap. 625 § 5/3–101 (current through Jan. 26, 2000).

8.  *Id.* at Chap. 625 § 5/3–402 (current through Jan. 26, 2000).

I further find that Paccar's lien as to Tractor # 3 attached in Kansas, and the validity of that lien is subject to Kansas Law pursuant to Missouri's Revised Statutes § 301.600.3. There is no Kansas Statute that prevents a debtor from establishing a presence in another state by adopting a post office box owned by a third-party and titling the truck there. And there is no Oklahoma Statute that precludes such an action. And, Oklahoma, likewise, has either a certificate of title or registration requirement for all motor vehicles located in the state:

It is the intent of the Legislature that the owner or owners of every vehicle in this state shall possess a certificate of title as proof of ownership and that every vehicle shall be registered in the name of the owners thereof.[9]

As Paccar points out in its brief, "Oklahoma is a 'trucker friendly state.' "[10] Again, the logic of *Stanley* controls here. At the time the Meades purchased Tractor # 3, Oklahoma, which clearly has the authority to require that every motor vehicle that is in the state be registered in the state, issued a certificate of title with the secured creditor's name duly noted.[11] Paccar filed a Lien Entry Form with the State of Oklahoma when it became the assignee of Associates' lien as to Tractor # 3.[12] The State of Oklahoma then noted the assignment and identified Paccar as the lienholder on the certificate of title.[13] I, therefore, find that the certificate of title issued by the State of Oklahoma is valid, and that Paccar's lien as to Tractor # 3 is a valid and perfected lien. I will find in favor of Paccar as to Tractor # 3.

I note that my finding in *Westfall* was predicated upon the fact that the debtor kept and maintained the tractor in Missouri, which clearly distinguishes that case from this one. In any event, however, I am guided by the District Court's holding in *Stanley*, which certainly represents where the law in this area tends to be moving. As Judge Whipple pointed out, Revised Article 9 of the UCC resolves this issue in favor of the creditor. Revised Article 9, as adopted by some states, and awaiting adoption in Missouri, provides that Section 9–103(2) "applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor."[14]

In summary, I find that Paccar has a valid and perfected lien as to Tractors 1, 2, and 3. As such, I will enter judgment in its favor. I will also grant Paccar's motion to lift the automatic stay as to these same tractors.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

9. Okla.Stat.Ann.Tit. 47, Chap. 74, § 1103 (current through Chap. 6 of 1999, 1st Ex. Sess.).

10. Doc. # 21 (quoting *Meeks v. Mercedes–Benz Credit Corporation (In re Stinnett)*, 241 B.R. 599, 600 (Bankr.W.D.Ark.1999)).

11. Ex. # 23.

12. Ex. # 24.

13. Ex. # 25.

14. *Krigel v. Mercedes–Benz Credit Corporation (In re Stanley)*, 249 B.R. 509, 518 n. 3 (W.D.Mo.2000).